INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION *v.* COLPAERT REALTY CORPORATION ET AL.

[No. 28,852. Filed December 16, 1952.]

464

*J. Emmett McManamon,* Attorney General, *John J. McShane, Lloyd C. Hutchinson, Joseph E. Nowak* and *Robert F. Wallace,* Deputy Attorneys General, for appellant.

*Rolland Obenchain* and *Jones, Obenchain & Butler,* all of South Bend for appellee.

DRAPER, J.—The appellees are Indiana corporations having their offices in the same building in South Bend, Indiana. They are affiliates, but each keeps separate books and records. They are engaged in the business of buying real estate and subdividing, improving, leasing, mortgaging and selling the same.

The transactions in which they were engaged, and which are involved in this case, fall into three categories which have been designated as B, C, and D. Class B transactions are those in which one of the appellees would erect a home on an unencumbered lot owned by it, and would then execute a note payable to a mortgage loan company in monthly installments secured by a mortgage on the real estate. It would then convey said real estate to a purchaser by warranty deed, in which it was recited that the purchaser assumed and agreed to pay said mortgage. Immediately thereafter the appellee, the purchaser and the mortgagee would execute an "Agreement for Substitution of Liability" whereby the purchaser agreed to pay said mortgage note and to be bound by all of the terms and provisions of the mortgage, and the mortgagee agreed to look to the purchaser for payment of the mortgage, and released the appellee from all personal liability for the payment thereof.

Class C transactions are those in which the purchaser by the terms of the warranty deed would assume and agree to pay the mortgage, but in which no agreement for substitution of liability was executed. In this class the mortgages were not paid or released during the year in which the property was deeded to the purchaser.

Class D transactions are like Class C transactions except that in this class the mortgages, which the purchaser assumed and agreed to pay, were paid and released during the year in which the property was deeded to the purchaser.

The tax years involved are 1946, 1947 and 1948. No transactions in which the properties were deeded prior to April 27, 1946, are involved in this case.

The trial court held that the amounts represented by these transactions, over and above the initial payments actually made by the purchaser to the appellee (taxes upon which had already been paid) are not subject to gross income tax. We are asked to review that decision. The appellants will be hereafter referred to as the "department."

The department contends, with respect to Class B, that appellee constructively received the various amounts represented by said agreements of substitution, in that said agreements were *equivalent* to the payment of the debt of the appellee by a third party for its direct benefit, as covered by and provided for in the definition of the term "receipt" and "received," all as found in Sec. 1 (h) and (i) of the Indiana Gross Income Tax Act of 1933, as amended.

With respect to categories C and D it is the department's position, as we understand it, that the appellee constructively received income under the Act when the purchaser assumed and agreed to pay the mortgage which had been executed by the appellee, or in any event constructively received income when the payments called for by the mortgage note were actually paid to the mortgage loan company by the purchaser of the real estate.

Subdivisions (h), (i) and (m) of the Acts of 1947, ch. 370, §1, being Burns' Stat., §64-2601, provide in part as follows:

"(h) Except as hereinafter otherwise expressly provided the term 'receipts,' as applied to a taxpayer, shall mean the gross income in cash, notes, credits and/or other property which is received by the taxpayer or is received by a third person for his benefit.

"(i) Except as hereinafter expressly provided, the terms 'receive' or 'received,' or other forms

thereof, as applied to a taxpayer, shall mean the actual coming into possession of, or the crediting to, the taxpayer of gross income as hereinafter defined, or the payment of his expenses, debts, or other obligations by a third party for his direct benefit.

"(m) The term 'gross income,' except as hereinafter otherwise expressly provided, means the gross receipts of the taxpayer received as compensation for personal services, including but not in limitation thereof, . . . the gross receipts received from the sale, transfer or exchange, of property, tangible or intangible, real or personal, including the sale of capital assets, . . . and all other receipts of any kind or character received from any source whatsoever, and without any deductions on account of the. return of capital invested, the cost of the property sold, the cost of materials used, labor cost, interest, discount, or commissions paid or credited, or any other expense whatsoever paid or credited, and without any deductions on account of losses, and without any other deductions of any kind or character. . . ."

It must be borne. in mind, in determining whether taxable gross income resulted from the transactions under consideration, that to constitute gross income the transactions must come clearly within statutory provisions defining such income. In case of doubt the statute will be construed against the state and in favor of the taxpayer. *Walgreen Co.* v. *Gross Income Tax Div.* (1947), 225 Ind. 418, 75 N. E. 2d 784, 1 A. L. R. 2nd 1014; *Oster* v. *Department of Treasury* (1941), 219 Ind. 313, 37 N. E. 2d 528; *Department of Treasury* v. *Muessel* (1941), 218 Ind. 250, 32 N. E. 2d 596. As said in the case last cited, and reiterated in *Dept. of Treasury* v. *International Harvester Co.* (1943), 221 Ind. 416, 47 N. E. 2d 150:

"Unless the transaction comes clearly within one of the provisions of this definition it cannot be

taxed as gross income. It is a settled rule of statutory construction that statutes levying taxes are not to be extended by implications beyond the clear import of the language used, in order to enlarge their operation, so as to embrace transactions not specifically pointed out. In case of doubt such statutes are to be construed more strongly against the state and in favor of the citizen."

As affecting all categories, the appellee takes the position that the word "property" as used in subsection (m) of §1 of the Act refers not to lands and chattels, but to rights or interests therein, including the separate "actual interests" or "substantial interests" of mortgagors and mortgagees, and only the proceeds of the sale of such separate "interests" are taxable to the seller.

In Indiana a mortgage is a lien—a mere security for the debt. The mortgagee has no title to the land mortgaged, *Oldham* v. *Noble* (1946), 117 Ind. App. 68, 66 N. E. 2d 614, although for some purposes, such as eminent domain, the mortgage may be considered to confer upon the mortgagee an interest in the land itself. *Sherwood, Administrator* v. *The City of Lafayette et al.* (1887), 109 Ind. 411, 10 N. E. 89, 58 Amer. Rep. 414. There are other situations, not relevant here, in which mortgagees have been considered as having some interest in real estate under particular statutes or for certain purposes. And it is true that the legislature may provide that, for purposes of taxation, the amount of a mortgage indebtedness or a part of it may be deducted from the assessed valuation of the mortgaged premises. Burns' Stat., §64-209. *State, ex rel.* v. *Smith* (1902), 158 Ind. 543, 63 N. E. 25, 63 N. E. 214, 64 N. E. 18, 63 L. R. A. 116; *Savings & Loan Society* v. *Multnomah County* (1898),

169 U. S. 421, 42 L. E. 803, 18 S. C. 392. It expressly did so in §64-209, supra.

But it established no such exemption here. The statute under consideration defines gross income as "the gross receipts received from the sale . . . of property, tangible or intangible, real or personal. . . ." We can find nothing in the Act which indicates to us that the word . "property" is therein used only in the sense of the taxpayer's interest or rights in and connected with the thing sold, rather than the thing itself. *R. L. Shirmeyer, Inc.* v. *Ind. Revenue Bd.* (1951), 229 Ind. 586, 99 N. E. 2d 847, held, in effect, to the contrary.

We first consider category B, in which category the novation agreements were made. In these cases, by agreement of the parties, the purchaser of the real estate was substituted as the mortgage debtor in place of the appellee. The purchaser became the sole debtor, the appellee being released and discharged of any obligation to pay. A tax liability against the appellee could arise out of this transaction only if the transaction itself constituted the "payment" of the appellee's debt or other obligation by a third party for appellee's direct benefit.

In construing statutes, words and phrases will be taken in their plain or ordinary and usual sense unless a different purpose is clearly manifest by the statute itself, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import. Burns' Stat., §1-201; *R. L. Shirmeyer, Inc.* v. *Ind. Revenue Bd., supra.*

The statute provides that the *payment* by a third party of the taxpayer's debts or other obligations for

his direct benefit qualifies as the constructive receipt of gross income. The word "payment" is not a technical term. It is in reality largely a question of intention between the debtor and creditor. *Penn. Mut. Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379, 72 N. E. 132. " 'Payment' is not a word of technical legal meaning. It is well understood by the layman and, indeed, was brought into law proceedings from commercial life and not from the law treatises. It has been defined as the discharge of an obligation by the delivery and acceptance of money, or of something equivalent to money, which is regarded as such at the time by the person to whom payment is due." 40 Am. Jur., Payment, 715. In a broad sense payment is the fulfillment of a promise, or the performance of an agreement. In a more restricted legal sense payment is the performance of a duty, promise, or obligation, or discharge of a debt or liability, by the delivery of money or other thing of value by a debtor to a creditor, where the money or other valuable thing is tendered and accepted as extinguishing the debt or obligation in whole or in part. Black's Law Dictionary, 3rd Edition. It is the discharge in money or its equivalent of a debt or obligation; the actual or constructive delivery by a debtor to his creditor of money or its equivalent with the intent thereby to extinguish the debt and acceptance thereof by the creditor with the same intent. 70 C. J. S., Payment, 208. "The term 'payment', in its legal import, means the satisfaction of a debt by money or the representative of money, and not by novation, compromise or accord and satisfaction. . . ." *Stone* v. *Webster* (1943), 65 Idaho 392, 144 Pac. 2d 466; *McPike Drug Co.* v. *Williams et al.* (1924), 104 Okla. 244, 230 Pac. 904. (Cases involving pleading.)

The "release", "discharge" or "cancellation" of a debt or other obligation by any method other than by payment is not mentioned in the statute. The legislature seems to have chosen its language with great care. It selected a particular and restricted method of conferring a "direct benefit" upon the taxpayer. Of the several methods of discharging obligations, the legislature chose a particular one, namely "payment." In our opinion the legislature, by specifically mentioning "payment," implied the exclusion of other methods of discharging obligations. 50 Am. Jur., Statutes, 238. Cf. *State ex rel. Donahue* v. *Bd. of Tr. Firemen's Pen. F.* (1937), 211 Ind. 643, 7 N. E. 2d 196. The release or discharge of the debts or other obligations of the taxpayer by methods other than payment would therefore not constitute the constructive receipt of income under the Act.

The transaction under consideration was not payment. It was not considered or intended by the parties to be payment. As above stated, we are not at liberty to extend the meaning of this statute, which levies taxes, by implication, so as to embrace transactions not specifically pointed out. It is not enough, under the statute, for the transaction to be "equivalent" to payment, or that it somehow relieves the debtor of the duty to pay. To be taxable, there must have been payment of the debt or other obligation of the taxpayer.

Neither could the later actual payment of the mortgage indebtedness by the purchaser of the real estate constitute a taxable event under the statute. The appellee having been released of all liability to pay the debt by the agreement above referred to, a later payment thereof by any other person could not be considered as the payment of the appellee's debt or obliga-

tion. It would be the payment of the debt or obligation of the purchaser who had assumed and agreed to pay it. It follows that the transactions in this category do not constitute gross receipts to the appellee.

We now consider categories C and D which, as we have said, embrace those situations where no agreement for substitution of liability was entered into but where the purchaser would assume and agree to pay the mortgage indebtedness, the only difference between these two classes being that in the former the mortgage indebtedness was not paid and released during the year in which the property was conveyed, while in the latter the mortgages were paid and released during the year in which the premises were conveyed. Since, in the view we take of the case, the time of payment is unimportant, we consider categories C and D together.

We first inquire whether the purchaser's assumption of the mortgage debt, and his agreement to pay it, did of itself constitute the constructive receipt of gross income to the appellee measured by the total amount of the assumed notes and mortgages, as contended by the department.

As above stated, by §1 (h) of the Act "receipts" are stated to mean "cash, notes, credits and/or other property which is received by the taxpayer or is received by a third person for his benefit." By §1 (i) "receive" and "received" are stated to mean "the actual coming into possession of, or the crediting to the taxpayer of gross income . . ." or "the payment of his . . . debts . . . by a third party for his direct benefit."

It seems clear that the mere act of assumption by the purchaser does not bring into being taxable "receipts" to appellee, nor does it constitute a taxable transaction or taxable event. The appellee clearly received no cash or notes by reason of the transaction;

nor, as we view it, did it receive a "credit" or "other property" within the meaning of §1 (h) of the statute.

In the case of *Gardner-White Co.* v. *Dunckel* (1941), 296 Mich. 225, 295 N. W. 624, it was said that the term "credit" as used in General Sales Tax Act defining the term "gross proceeds," "represents a type of property . . . that is capable of being borrowed upon or discounted at financial institutions. It is an item of incorporeal personal property just as much as a share of stock or a bond, chattel mortgage, real estate mortgage or other form of collateral."

It is in this sense, we think, that the phrase "credits and/or other property" was used in §1 (h) of the statute. The word as there used imports the existence of something of value which may presently be demanded by the one in whose favor the credit is created, if one is created; something of value capable of being withdrawn and used; a claim or demand for money or other thing of value presently existing. The statute refers to cash, notes, credits or other property which is received during the taxable period. Clearly nothing capable of appraisement or of ascertainable value was received by the taxpayer by reason of the mere assumption by the purchaser of the mortgage debt, and his agreement to pay it. The assumption of the mortgage by the purchaser gave rise to no claim or demand for money or other thing of value subject to withdrawal or demand at the instance of the appellee. By the transaction no taxable asset came into the possession of the appellee. The purchaser did agree to pay and discharge a liability of the appellee, but whatever value that agreement may have had to the appellee was purely speculative, contingent, and remote. Nothing came into the actual possession of the appellee by

reason of the assumption and agreement of the purchaser to pay the debt.

That the department itself has construed the word "credit" as a claim or demand for money or other thing of value, and the existence of property in some form which can be demanded by the one in whose favor the demand was created, is indicated by Regulation 1006. "Constructive receipts" are there defined to be "those items of gross income which are not actually received by the taxpayer but *which are credited to him for available withdrawal* or are paid to another person for the taxpayer's benefit." The regulation further states that:

> " 'Constructive receipts' includes interest coupons, dividends, interest on savings accounts and bank deposits, commissions and salaries for services or items of income from any source whatsoever maturing to the credit of or becoming due a taxpayer but not actually reduced to possession, but which have matured, become due or have been unconditionally credited to the account of, or set apart for, any taxpayer, and which may be withdrawn by him at his own election at any time, will be subject to gross income tax for the period in which such amounts are so credited, set apart or become available for withdrawal."

We think a "credit", to be taxable under §1 (h), must properly come within the foregoing. There was no "credit" here.

We now consider whether the actual payment of the mortgage debt by the purchaser who assumed and agreed to pay it constituted taxable income to the appellee within the tax period within which it, or a part of it, was paid under §1 (i) of the Act. To constitute gross income received under that section the payment by the purchaser must have been the payment

of the appellee's "expenses, debts or other obligations by a third party for his (the appellee's) direct benefit."

It should first be pointed out that the situation here presented is unlike that presented in *R. L. Shirmeyer, Inc.* v. *Ind. Revenue Bd., supra.* In that case the purchaser of the real estate took it *subject* to the existing mortgage, but did not assume and agree to pay the mortgage indebtedness. The purchasers under categories C and D, which we are now considering, assumed and agreed to pay the mortgage indebtedness. In the Shirmeyer case the acceptance of the deed subject to the mortgage imposed upon the purchasers no liability to pay the mortgage debt. The legal obligation for the payment of the debt secured by the mortgage remained with the mortgagors. In this case the purchasers became directly and personally liable to pay the mortgage debt. In *Todd* v. *Oglebay* (1902), 158 Ind. 595 at page 599, (64 N. E. 32) this court said:

> "It is well established in this State that a grantee who agrees and assumes to pay off an encumbrance on the land, as a part of the purchase price, thereby becomes to the lien creditor primarily liable for the debt; and, while the grantor will remain equally bound by his obligation, yet, as between him and his grantee, he becomes surety, and his grantee principal debtor. As between the parties to the deed, the encumbrance becomes the debt of the grantee. Stanton vs. Kenrick, 135 Ind. 382; Ellis vs. Johnson, 96 Ind. 377; Rodenbarger vs. Bramblett, 78 Ind. 213; Campbell v. Patterson, 58 Ind. 66; Josselyn vs. Edwards, 57 Ind. 212."

The Appellate Court said in *Black* v. *Krauss* (1949), 119 Ind. App. 529, 85 N. E. 2d 647:

> "The law is settled that a grantee of real estate, the deed of conveyance to whom contains a stipulation for his assumption of a debt secured by mortgage thereon, which debt his grantor is personally

bound to pay, becomes, by the acceptance of such deed, personally bound to the mortgage creditor; and, as between such grantee and his grantor, the former becomes the principal debtor, while the latter becomes a surety. Ellis et al. v. Johnson, Trustee (1884), 96 Ind. 377; Figart v. Halderman (1881), 75 Ind. 564; Hill v. Minor (1881), 79 Ind. 48." See also *Snyder* v. *Robinson and Another* (1871), 35 Ind. 311; *Begein et al.* v. *Brehm* (1890), 123 Ind. 160, 23 N. E. 496; 59 C. J. S., Mortgages, 578, 603, 606.

As above stated, the act of the purchaser in assuming and agreeing to pay the debt does not relieve the mortgagor from liability for the debt. He remains liable to the mortgagee who may enforce the debt against him. But by assuming and agreeing to pay the debt the purchaser has manifestly become the person most to be benefited by the payment of it. By the payment of it the purchaser discharges his liability both to the mortgagor and to the mortgagee. By full payment he puts his real estate beyond danger of its loss to him. By partial payment he minimizes that danger. By payment he also discharges the legal liability of the mortgagor, and under the definition of the word "benefit" approved by us in the Shirmeyer case, there can be no doubt that the mortgagor is or may be benefited by that payment. But to constitute taxable income to the latter the payment of his debt or obligation must be made for his *direct* benefit. The word "direct" is found in the statute and it must be given meaning since it may be treated as surplusage only if no other possible course is open. *Lincoln National Bank & Trust Co.* v. *Nathan* (1939), 215 Ind. 178, 19 N. E. 2d 243.

As an adjective the word "direct" means, among other things, immediate; proximate; without circuity. Black's Law Dictionary, Third Edition. It has been

distinguished from collateral; consequential; incidental; and remote. 26 C. J. S., Direct, 1317; *Commissioner of Banks* v. *Chase Securities Corporation* (1937), 298 Mass. 285, 10 N. E. 2d 472. Considering the relative advantages flowing to the respective parties, it seems to us that where a purchaser assumes and agrees to pay a debt secured by mortgage, the *direct* benefit to be derived from the subsequent payment of it must be said to flow to the purchaser, and the benefit flowing to the grantor-mortgagor is secondary, incidental, consequential and remote, and therefore indirect within the meaning of the statute.

This belief is confirmed by the interpretation put upon the Act by the department itself. From the beginning it has been the duty of the department to implement the law by rules and regulations for the ascertainment, assessment and collection of the tax. Burns' Stat. §64-2629. Continuously until April 26, 1946, it was provided by a rule of the department that:

> "Taxpayers selling real property upon which there is a mortgage lien will be deemed to be selling only an equity therein *when the mortgage lien is assumed by the purchaser,* and only the amount received in cash, notes or other property will be reported for gross income tax." (Emphasis supplied.)

It is clear from the foregoing that the department itself early determined that the payment of a mortgage by an assuming purchaser was not made for the "direct" benefit of the mortgagor-grantor, and for thirteen years the department administered the Act in conformity with that determination.

While not controlling, the contemporaneous construction of a statute by those charged with the administra-

tion of it is entitled to great weight, and should not be interferred with unless there are very cogent and persuasive reasons for departing from it. *Wysong* v. *Automobile Underwriters, Inc.* (1933), 204 Ind. 493, 184 N. E. 783, 94 A. L. R. 826; *United States* v. *American Trucking Associations* (1940), 310 U. S. 534, 84 L. Ed. 1345, 60 S. Ct. 1059; *Fawcus Machine Co.* v. *United States* (1931), 282 U. S. 375, 75 L. Ed. 397, 51 S. Ct. 144; 42 Am. Jur., Public Administrative Law 392. Particularly is this true where, as here, the legislature by inaction continuing through several sessions, has indicated satisfaction with that construction. *County Department, etc.* v. *Scott's Estate* (1944), 115 Ind. App. 28, 55 N. E. 2d 337; *Hindman* v. *State* (1943), 221 Ind. 611, 50 N. E. 2d 913; 50 Am. Jur., Statutes 318.

The above regulation remained in effect until April 27, 1946, when the department promulgated Regulation 3405 of which §2 provides as follows:

> "If any mortgage existing on real property at the time of sale was executed by the seller of such real estate as security for borrowed money received by, or credited to, such seller, then no deduction whatsoever may be taken by the seller, regardless of whether the mortgage is assumed by the purchaser; satisfied by the purchaser or a third party; or satisfied by the seller with funds provided by the purchaser or other parties."

Although the department insists that it relies upon the statute and not on any rule promulgated pursuant to statutory authority, it seems apparent that its policy changed with the advent of the new regulation.

An administrative board has the undoubted right to adopt rules and regulations designed to enable it to perform its duties and to effectuate the purposes of the

480

law under which it operates, when such authority is delegated to it by legislative enactment. *Blue* v. *Beach* (1900), 155 Ind. 121, 56 N. E. 89; *Albert* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 200 N. E. 688; *McCreery* v. *Ijams* (1945), 115 Ind. App. 631, 59 N. E. 2d 133. But it may not make rules and regulations inconsistent with the statute which it is administering, it may not by its rules and regulations add to or detract from the law as enacted, nor may it by rule extend its powers beyond those conferred upon it by law. *McCreery* v. *Ijams, supra;* 73 C. J. S., Public Administrative Bodies and Procedure, §§93 and 94. We think Sec. 2 of Regulation 3405, insofar as it purports to make transactions under categories C and D taxable, transcends the statute.

We find no statutory authorization for the imposition of gross income tax upon the amounts represented by any of these transactions, and the judgment is therefore affirmed.

NOTE.—Reported in 109 N. E. 2d 415.