INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION v. WILLIAM A. POPE COMPANY

[No. 2-176A13. Filed September 22, 1977. Rehearing denied October 26, 1977. Transfer denied February 16, 1978.]

*Theodore L. Sendak*, Attorney General, *James M. Garrettson*, Deputy Attorney General, for appellant.

*Richard E. Deer, Daniel H. Fitzgibbon, Barnes, Hickam, Pantzer & Boyd*, of Indianapolis, for appellee.

WHITE, J.—The Gross Income Tax Division of the Indiana Department of State Revenue appeals from a trial court decision that the entire Indiana income ($8,108,484.00) received by the William A. Pope Company in 1970, 1971, and 1972, should be

classified as income received by a retail merchant from selling at retail and thereby subject to gross income tax liability at the rate of one half of one percent rather than the mixed rate of two percent for installation income and one half of one percent for sales income as assessed by the department.

We reverse.

Pope, an Illinois Corporation doing business as a mechanical and nuclear piping contractor, installed piping, heating and ventilation systems in various industrial plants in Indiana. Pope supplied all of the materials and labor necessary and remained responsible for all loss and damage however caused prior to the customer's final acceptance of the project. Customers, through their engineers, had the right to reject defective material or workmanship and to refuse acceptance of the completed installation if not satisfied that the contract specifications had been fulfilled.

The question is whether Pope's income was received from "selling at retail" and thus taxable at a rate of .5%, or from the performance of services and thus taxable at a rate of 2%, or from both, each being taxable at its proper rate. The answer is found in Ind. Ann. Stat. § 6-2-1-1 (Burns Code Ed., 1972), subsections (i) and (k), being the definition section of the gross income tax act. In the following quotation of those subsections the italicized words were added by a 1955 amendment and those lined through were deleted by the amendment:

> "(j) The term 'retail merchant' means and includes only a person regularly and occupationally engaged in purchasing tangible personal property and ~~selling the same at retail at a fixed and established place of business~~ *providing the same to his customer either as purchased or after having been modified, and either alone or in conjunction with the rendition of personal services at a fixed and established place of business.*

> "(k) The term 'selling at retail' means and includes only a transaction by a 'retail merchant' by which the ownership of tangible personal property is transferred, conditionally or otherwise, for a consideration, when such transfer is made in the ordinary course of the transferor's regularly conducted business and ~~at~~

~~a fixed and established place of business~~ *when such property is acquired by the transferor for the purpose of resale* and is acquired by the transferee for any *other* purpose other than ~~those~~ *the purposes* designated ~~by~~ *in* subsection (a) of section 3[1] of this act: *Provided, however, That only so much of the consideration as represents the price at which such property is or may be sold without the rendition of any service whatever by the transferor in respect to such property and such bona fide charges separately stated on the records of the transferor as may be added to or included in such consideration for the preparation, fabrication, alteration, modification, finishing, completion, delivery or other services performed in respect to such property, and not to any extent in respect to any property owned by the transferee, by or on behalf of the transferor prior to the delivery of the property to the transferee, or to the place of delivery designated by the transferee, shall be considered to be received from 'selling at retail', and all other charges added to or included in such consideration for any and all other services performed by or on behalf of the transferor in respect to such property and the receipts of all persons from the performance of services on behalf of such transferor in respect to transactions constituting 'selling at retail' by such transferor shall be considered receipts from the performance of services taxable under subsection (g) of section 3 of this act."*

In applying the above statutes as amended, the court found Pope to be a "retail merchant" (which the Department concedes is correct) and further held that:

"34. The word 'delivery' as used in the phrase 'prior to the delivery of the property to the transferee, or to the place of delivery designated by the transferee' in IC 1971, 6-2-1-1(k), means delivery of the property effected by transfer of ownership of such property, and services rendered by the transferor on such property prior to such transfer of ownership are subject to the lower rate of gross taxation."[2]

---

1. The purpose designated in subsection (a) of section 3 is "selling at wholesale."

2. The trial court's next finding was:

"35. Under the contracts of the Plaintiff for which refund is sought in these causes, ownership of tangible personal property is transferred when installation has been completed in accordance with the applicable contract provisions and to the purchaser's satisfaction, at which point 'delivery' for purposes of IC 1971, 6-2-1-1(k) occurs by reason of the use, application or attachment of the tangible personal property upon the property of the transferee."

The court concluded that inasmuch as all compensation received by Pope represented either the price of the property or charges for services performed prior to "delivery", all Pope's income was received from "selling at retail".

The trial court's definition of "delivery" as set out above makes "delivery" and "transfer of ownership" synonymous. This is contrary to the legislative intent apparent in the history of the Act and made manifest in the 1955 amendment of the above quoted subsections (j) and (k) of § 6-2-1-1.

Early in the 1950's two judicial decisions held that under the language of the statute (prior to the 1955 amendment) retail transactions were non-severable for the purposes of determining the gross income tax rate. All income from a transaction that involved both the selling of a chattel and the performance of a service was to be taxed at one rate, the rate to be determined by what was assumed to be the subjective intent of the purchaser. In *Samper v. Indiana Department of State Revenue* (1952), 231 Ind. 26, 106 N.E.2d 797, all income received from the repair of radios, including charges for replacement parts, was held taxable at the two percent service income rate because the customer was seeking a service, the repair of his radio. In *Gross Income Tax Division*

---

This finding suggests that the court was unduly influenced by an instruction published by the department for the guidance of taxpayers, especially by the somewhat vague and ambiguous final phrase thereof:

"(c) *MEANING OF 'DELIVERY' AS EXPRESSED IN SECTION 1(k) OF THE ACT AND IN THIS INSTRUCTION.*

For the purposes of Section 1(k), the phrase 'prior to delivery of the property to the transferee, or to the place of delivery designated by the transferee' means and has reference to that delivery which occurs when the involved tangible personal property is delivered by the transferor to the transferee or to his representative at an established place of business of the transferor, or to the premises of the transferee, or to a conveyance of the transferee, or to a place designated by the transferee or designated by agreement with the transferor; or is delivered by the transferor to a carrier F.O.B. point of shipment, or is delivered for the transferor by a carrier F.O.B. the place designated by the transferee or designated by agreement with the transferor; or is delivered by its use; application or attachment to or upon the property or the person of the transferee."

Insofar as the above instruction conflicts with this opinion it is invalid. *Indiana Dept. of State Revenue v. Colpaert Realty Corp.* (1952), 231 Ind. 463, 479-480, 109 N.E.2d 415, 422-423.

*v. L.S. Ayres* (1954) 233 Ind. 194, 118 N.E.2d 480, income received by a department store for alteration of ready-made clothing and for installing various floor coverings and draperies in customers' homes was held taxable at the lower retail sales rate because the customer was purchasing a product, i.e., clothes, carpets and curtains that fit properly.

There can be little doubt that the 1955 amendment, enacted less than a year after *Ayres*, was a legislative response to those decisions and was intended to modify the language of the Act so as to produce a different interpretation in the future. As stated in *Economy Oil Corp. v. Indiana Department of State Revenue* (1974), 162 Ind. App. 658, 321 N.E.2d 215, 219:

> "Another fundamental rule of statutory construction is that a statutory amendment changing a prior statute indicates a legislative intention that the meaning of the prior statute has been changed. This raises a presumption that the legislative intended to change the law unless it clearly appears that the amendment was made to only express the original intention of the legislature more clearly."

The definition of "retail merchant" as it has been amended recognizes that a given transaction can involve both the sale of chattels and the sale of services. The proviso added by the 1955 amendment to the definition of "selling at retail" clearly evidences an intent to make such dual transactions severable for purposes of taxation. It specifically describes those services for which charges may be added to the price of a chattel and still be considered income from "selling at retail": "the preparation, fabrication, alteration, modification, finishing, completion, delivery or other services performed in respect to such property ... prior to the delivery of the property to the transferee, or to the place of delivery designated by the transferee . . . ." It specifically excludes from such income charges for such services if performed "to any extent in respect to any property owned by the transferee." Finally, it provides that all income received from activities other than those specifically allowed to be included within "selling at retail" are to be considered income from the performance of services.

There is no indication of any legislative intent to equate "delivery" with "transfer of ownership". Prior to its amendment the statute defined "selling at retail" as a "transaction . . . by which the ownership . . . is transferred." If all income from such a transaction were to be considered income received from "selling at retail" there would be no need for adding the lengthy proviso, the only apparent purpose of which is to introduce the concept of "delivery" as the point separating income derived from the sale of chattels from income received from the performance of services. Thus delivery must mean something different from the transfer of ownership. If "delivery" is to have a meaning different from transfer of title to the chattel it perforce must mean transfer of the chattel itself, the physical transport of the chattel to the purchaser or to a place designated by the purchaser.

We therefore hold that in the transactions here involved delivery was completed when the necessary materials were unloaded at the job site, i.e., the place of delivery specified by the transferee. Income from services performed thereafter was taxable at the services rate and not at the rate for retail sales.

The judgment is reversed and this cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

Reversed and remanded with instructions.

Sullivan, P.J., concurs. Lybrook, J., participating by designation, concurs.

NOTE—Reported at 367 N.E.2d 47.