**INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Defendant Below),**

v.

**NORTHERN INDIANA STEEL SUPPLY COMPANY, Appellee (Plaintiff Below).**

No. 3–878A197.

Court of Appeals of Indiana, Third District.

April 26, 1979.

Rehearing Denied June 8, 1979.

Theodore L. Sendak, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for appellant.

O. Jerrold Winski, Sweeney, Winski, Dabagia & Donoghue, Michigan City, for appellee.

STATON, Judge.

The Indiana Department of State Revenue assessed a gross income tax on the entire amount received from the sale of certain equipment by Northern Indiana Steel Supply Company. After paying the tax, Northern was denied a refund and brought the action below. The trial court granted Northern's motion for summary judgment, holding that Northern could not be taxed on the amounts which constituted security interests in the equipment which were assumed and paid by the purchaser.

We find no error and we affirm.

The facts involved are not in dispute. On January 2, 1971, Northern sold two cranes, magnets, and a mobile office with furniture to Burns International Dock, Inc. One of the cranes was subject to a conditional sales contract and a security agreement. The other crane and the magnets were subject to security agreements. Burns assumed those obligations upon purchasing the equipment and later paid or renegotiated the same.

The total purchase price was $405,319.80. Burns, the purchaser, assumed and later paid obligations totaling $383,163.50 and paid Northern cash in the amount of $22,-156.30.

Following an audit, the Department notified Northern of a tax deficiency due on the total sale price of the equipment. Northern filed a written protest which was denied after an administrative hearing. Subsequently, Northern paid the sum of $10,-094.08, which included interest and a penalty. Following the Department's denial of a refund, Northern filed its complaint with the trial court.

The trial court granted Northern's motion for summary judgment in the amount of $10,094.08, with interest for the following stated reasons:

"(1) Encumbered personal property was sold by the plaintiff and the purchaser assumed and agreed to pay the lien and the plaintiff therefore received taxable gross income only to the extent of its equity in the property, and it did not receive taxable income to the extent of the encumbrance.

"(2) That there was no constructive receipt, either at the time of the assumption of the indebtedness by the purchaser or at the time of his payment thereof."

On appeal, the Department argues that the purchaser's assumption and payment of Northern's outstanding obligations on the sale equipment constituted the receipt of gross income under the terms of IC 1971, 6–2–1–1, Ind.Ann.Stat. § 64–2601 (Burns Code Ed.). Since the General Assembly has provided no statutory exemption for such receipts, Northern was assessed a tax upon the entire purchase price, not just its equity in the equipment.

Northern contends that the question is not one of exemption, but whether the entire purchase price was includable in its taxable gross income in the first instance. Under the statute's definitions of "receipts" and "receive," the purchaser's assumption and payment of the liens upon the equipment did not result in taxable income to Northern.

The issue before us is whether the purchaser's assumption and payment of liens upon the sale equipment provided a direct benefit to Northern, such that the amounts of the liens assumed and paid could be taxed as gross income to Northern.

Under IC 1971, 6–2–1–1(m), gross income includes:

"the gross receipts received from the sale, transfer, or exchange of property, tangible or intangible, real or personal, including the sale of capital assets, . . ."

IC 1971, 6–2–1–1(h) defines "receipts" as meaning

"the gross income in cash, notes, credits or other property which is received by the taxpayer or is received by a third person for his benefit."

Finally, IC 1971, 6–2–1–1(i) provides that "the terms 'receive' or 'received,' or other forms thereof, as applied to a taxpayer, shall mean the actual coming into possession of, or the crediting to, the taxpayer of gross income as hereinafter, defined, or the payment of his expenses, debts, or other obligations by a third party for his direct benefit."

Under the clear language of the statute, the entire purchase price of the equipment would be taxable if the purchaser's assumption of the liens constituted payment of Northern's debt for its direct benefit. However, we are unable to conclude that Northern received either a credit or payment for its direct benefit as a result of the purchaser's assumption or payment of the liens upon the equipment.

In rendering our decision, we are guided by no Indiana cases directly applicable to such a transaction. However, in 1952, the Indiana Supreme Court decided two cases which interpret the gross income tax statute when applied to a purchaser's assumption of a mortgage.

In *Indiana Dept. of State Rev. v. Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N.E.2d 415, the Supreme Court decided that a purchaser's assumption of a mortgage debt does not result in taxable receipts to the seller in the form of a credit or other property.

"The release or discharge of the debts or other obligations of the taxpayer by methods other than payment would therefore not constitute the constructive receipt of income under the Act."

109 N.E.2d at 419. Further, the actual payment of the mortgage debt by the purchaser does not constitute taxable income to the seller:

"[T]he act of the purchaser in assuming and agreeing to pay the debt does not relieve the mortgagor from liability for the debt. He remains liable to the mortgagee who may enforce the debt against him. But by assuming and agreeing to pay the debt the purchaser has manifestly become the person most to be benefited by the payment of it. By the payment of it the purchaser discharges his liability both to the mortgagor and to the mortgagee. By full payment he puts his real estate beyond danger of its loss to him. By partial payment he minimizes that danger. By payment he also discharges the legal liability of the mortgagor, and under the definition of the word 'benefit' approved by us in the *Shirmeyer* case [*Shirmeyer, Inc. v. Indiana Revenue Board* (1951), 229 Ind. 586, 99 N.E.2d 847], there can be no doubt that the mortgagor is or may be benefited by that payment. But to constitute taxable income to the latter the payment of his debt or obligation must be made for his *direct* benefit."

\* \* \* \* \* \*

"Considering the relative advantages flowing to the respective parties, it seems to us that where a purchaser assumes and agrees to pay a debt secured by mortgage, the *direct* benefit to be derived from the subsequent payment of it must be said to flow to the purchaser, and the benefit flowing to the grantor-mortgagor is secondary, incidental, consequential and remote, and therefore indirect within the meaning of the statute."

109 N.E.2d at 421–22.

The Indiana Supreme Court reiterated this position in *Department of State Revenue v. Crown Develop. Co.* (1952), 231 Ind. 449, 109 N.E.2d 426. The court noted that the appellee, the seller of encumbered real property, did not receive the amount of the assumed mortgage indebtedness,

"or any part of it 'in cash, notes, credits and/or other property', nor has it been 'received by a third person for' appellee's

benefit. So far as shown by the briefs of the parties the mortgage indebtedness was paid only in the manner above noted and the appellee never at any time owned the outstanding indebtedness noted or any interest therein. On the contrary it owed it. The outstanding indebtedness was never a credit or asset to appellee but as to it, it was a liability. In no event could it ever become an income to appellee, but in certain events it might become an outgo. It cannot be contended that appellee received any income or benefit by the transactions noted over or above that which it received for its equity. By the transactions appellee and the mortgagee also received the contract of the purchasers to pay the outstanding notes and mortgages to the mortgagee. No effort has been made by appellant to place a value upon this contract or to tax it. It would be difficult to place any value upon it, since the total real estate surety may be equal to or in excess of the sums due or to become due on the outstanding mortgages, or the assuming purchaser may be fully able to liquidate the mortgage, in either of which situations no liability against appellee would ever exist in fact. When the outstanding mortgages were paid by the purchasers in the manner noted the payment was for the 'direct benefit' of the mortgagee and the purchasers, and not of the mortgagor. Any benefit to the mortgagor is merely incidental, and not direct."

109 N.E.2d at 429. The court summed up its view of the transaction as follows:

"It cannot be contended that the amount of the mortgage debt of the mortgagor would come into the possession of the mortgagor when and if it were paid by the assuming purchaser, nor would it be credited to the mortgagor as 'gross income' as that term is defined in . . . [the Gross Income Tax Act] nor would it be a payment of mortgagor's expenses, debts or other obligations by a

third party for its *direct* benefit. On the contrary it is a payment of borrowed money by the assuming grantees for their direct benefit—freeing their property from the mortgage lien. In no event could it come to appellee as an income."

109 N.E.2d at 430.

Subsequent to these decisions, the General Assembly enacted an exemption for the value of a mortgage involved in the sale of real estate.[1]

The language and reasoning contained in *Colpaert* and *Crown* may be related to the case at hand. In the present case, we are dealing with heavy equipment, not real property. Nonetheless, the effect of a lien is the same. In this case, a purchaser bought Northern's interest in various equipment, subject to security interests or a conditional sales contract. The purchaser's assumption of those outstanding liens did not constitute gross income in any form to Northern. In fact, Northern remained secondarily liable as a surety on the security interests until the purchaser paid or canceled those interests.

Finally, even upon the purchaser's payment of such liens, Northern could not be deemed to have received taxable income. The taxing statute empowers the Department to tax payment of a taxpayer's debts by a third party *for his direct benefit*. In this case, the purchaser paid the liens for its own direct benefit. The fact that Northern was thereupon freed as surety on the obligations constituted at most an incidental or indirect benefit under the taxing statute. *See Colpaert, supra* and *Crown, supra.*

The fact that, following the decisions in *Colpaert* and *Crown*, the General Assembly chose to treat real estate mortgages as an exemption from gross income does not change the result in this case. The court in *Colpaert* and *Crown* correctly determined that a purchaser's assumption and payment of a mortgage did not constitute taxable gross income to the seller in the first in-

1. "In computing taxes due on receipts from sales of real estate, the value of any mortgage or other similar encumbrances shall be exempted from the gross income taxable under this act [6–2–1–1—6–2–1–53] provided however, that the foregoing shall not apply to any mortgage or encumbrances created for the purposes of avoiding gross income tax liability."
IC 1971, 6–2–1–9, added in 1955.

stance. Similarly, in the present case, we have determined that a purchaser's assumption and payment of liens on heavy equipment did not result in gross income taxable to Northern.

The trial court was correct in holding that Northern was liable for tax only upon the amount of equity it held in the equipment sold, in other words, the net cash which it received from the sale.

The judgment of the trial court granting Northern's motion for summary judgment is affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.