TERRE HAUTE SAVINGS BANK *v.* INDIANA STATE BANK, THE MERCHANTS NATIONAL BANK OF TERRE HAUTE, AND TERRE HAUTE FIRST NATIONAL BANK, THE DEPARTMENT OF FINANCIAL INSTITUTIONS OF THE STATE OF INDIANA

[No. 1-677A122. Filed October 10, 1978. Rehearing denied November 14, 1978. Transfer denied April 16, 1979.]

*Bingham, Summers, Welsh & Spilman,* of Indianapolis, *Louis D. Natt-*

*kemper*, of Terre Haute, *Matthew E. Welsh, John P. Price, Grace M. Curry, Jonathan L. Birge*, for appellant.

*Cox, Zwerner, Gambill & Sullivan, W. N. Cox, Patrick, Ratcliffe, Gabbert, Wilkinson, Goeller & Modesitt*, of Terre Haute, *Craig, Craig & Yelton*, of Brazil, for appellees.

LYBROOK, P.J. — Petitioners-appellees Indiana State Bank, The Merchants National Bank of Terre Haute and Terre Haute First National Bank (Petitioners) filed a complaint with respondent-appellee The Department of Financial Institutions of the State of Indiana (Department), alleging that respondent-appellee Terre Haute Savings Bank (Respondent) was offering checking account services in violation of law, and praying for a cease and desist order against Respondent.

After notice and hearings, the Department found that Respondent could lawfully offer checking account services, that it was not engaging in any unsafe or unsound business practice, and that no cease and desist order should be issued. Petitioners then filed a petition for judicial review in the Vigo Superior Court under the provisions of the Indiana Administrative Adjudication Act, IC 4-22-1-1 *et seq.*, and the action was later venued to the Clay Circuit Court. On review, the trial court found the Department's decision to be contrary to law and reversed, and ordered Respondent to cease and desist the offering of checking account services. Respondent now appeals from the denial of its motion to correct errors.

The sole issue for review is whether a mutual savings bank organized and existing under the Savings Bank Act of 1869, IC 28-6-1-1, *et seq.*, may lawfully offer, advertise and maintain checking accounts.

We reverse.

From the findings of fact made by the Department in its final decision, it appears that Respondent has been in continuous operation as a mutual savings bank since December 1, 1869. Respondent is now, and has been during all times relevant to this appeal, in sound financial condition.

Respondent instituted its practice of maintaining checking accounts

in the year 1909. It has been a member of the Terre Haute Clearing House since 1925 and has never incurred any problems in having its checks cleared. Regular examinations of its operations have been made by both the Department and by the Federal Deposit Insurance Corporation (FDIC) which have resulted in no criticism, official or unofficial, of its checking account operations. It further appears that this practice was never officially questioned by any other commercial banks in the Terre Haute area until Respondent began offering and advertising free checking accounts in 1974. Shortly thereafter, in May, 1975, Petitioners filed their petition with the Department alleging that Respondent's practice of offering free checking accounts was illegal and was adversely affecting the ability of Petitioners to serve the public.

Respondent contends that the statutes governing this issue are ambiguous and in need of interpretation. It urges that the interpretation of a statute by an agency charged with its administration is entitled to great weight, and that the trial court had an insufficient basis for rejecting the interpretation of the Department. It further argues that the doctrine of legislative acquiescence should be applied in light of the fact that Respondent has continually offered checking account services for almost seventy years, during which time the legislature has taken no steps to terminate that practice. Finally, Respondent argues that the trial court exceeded its authority by substituting its judgment for that of the Department, rather than reviewing that determination as required under the Administrative Adjudication Act.

The act authorizing the establishment of mutual savings banks in this state was enacted in 1869 and has not been substantially altered since that time, although in 1937, the organization of any new mutual savings banks was prohibited by statute. IC 28-1-23-6. The portions of the Savings Bank Act which authorize the deposit and withdrawal of funds in and from a savings bank read as follows:

"28-6-1-16.—Every savings bank shall be authorized to receive on deposit any sum or sums of money that may be offered for that purpose by any person or persons, or by any religious or charitable corporations or societies, or that may be ordered to be deposited by any court of this state, and to invest the same, and declare, credit and pay dividends thereon. . . ."

"28-6-1-17.—The sums so deposited shall be repaid to each depositor or his legal or authorized representatives, when required by him or by them, but, at such times, and with such dividends from profits, and under such regulations as the board of trustees may prescribe, not inconsistent with the provisions of this act [28-6-1-1 — 28-6-1-44] . . ."

It appears that while the question of whether or not a savings bank may lawfully offer checking account services has never been decided in the courts of this state, some of our sister states have been faced with the same question under similar statutes. See 64 A.L.R.3d 1314. The decisions discussed in that annotation have resulted in a split of authority, with three states holding in favor of the savings banks and two states holding to the contrary. We feel that two of the decisions cited in the above annotation, *Hudson County National Bank v. Provident Institution for Savings* (1965), 44 N.J. 282, 208 A.2d 409, and *Androscoggin County Savings Bank v. Campbell* (Me. 1971), 282 A.2d 858, are particularly instructive in the case at bar.

In the *Hudson County* case, the court on appeal affirmed the judgment of the trial court which refused to enjoin the savings bank from offering and maintaining checking accounts. The New Jersey Supreme Court in that case substantially adopted the reasoning of the trial court's opinion[1] which contained a rather detailed account of the statutory provisions and administrative history of checking accounts in New Jersey savings banks. The court also found persuasive the fact that there was a lengthy history of checking account services in New Jersey savings banks. Finally, the court felt that the longstanding acceptance of this practice by the state bank commissioner coupled with the failure of the legislature to enact definitive legislation amounted to legislative acquiescence in the practice.

In the case of *Androscoggin County Savings Bank*, a case cited by Petitioners, the Maine Supreme Court held that a savings bank in Maine was not authorized to offer checking account services to its customers. In essence, the court held that such services were not reasonably incidental to the business of a mutual savings bank, and absent a specific

---

1.  193 A.2d 697, 80 N.J. Super. 339.

statutory provision to the contrary, the savings bank was without authority to offer checking accounts. However, the bank commissioner in that state had previously ordered the bank to refrain from offering such services. Further, the court distinguished its decision from that in *Hudson County, supra,* by stating that there was not a long-standing practice in Maine of allowing savings banks to offer checking accounts, and that there was no evidence in Maine, as there was in New Jersey, of legislative acquiescence in this practice.

Under the provisions of the Administrative Adjudication Act, the scope of judicial review of a decision of a state agency is limited to a consideration of whether or not that decision is arbitrary, capricious, an abuse of discretion, or in excess of statutory authority. IC 4-22-1-18; *Department of Financial Institutions v. State Bank of Lizton* (1969), 253 Ind. 172, 252 N.E.2d 248. Although this court is not bound by an agency's interpretation of a statute, as we are by its findings of fact, we still must give great weight to such an interpretation:

> "While not controlling, the contemporaneous construction of a statute by those charged with the administration of it is entitled to great weight, and should not be interfered with unless there are very cogent and persuasive reasons for departing from it. [citations omitted] Particularly is this true where, as here, the legislature by inaction continuing through several sessions, has indicated satisfaction with that construction." *Indiana Department of State Revenue v. Colpaert Realty Corporation* (1952), 231 Ind. 463, 109 N.E.2d 415, 422.

The judicial deference to an administrative interpretation may be further strengthened by evidence of legislative acquiescence:

> "We recognize the established authority that a long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change having been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts." *Baker v. Compton* (1965), 247 Ind. 39, 211 N.E.2d 162, 164.

The evidence in this case shows that the Department, after notice and after hearings in which ample testimony was given by witnesses

knowledgeable in the area of banks and banking, found that Respondent's practice of offering and maintaining checking accounts was not inconsistent with nor barred by the applicable banking statutes. It is uncontroverted that Respondent has maintained this practice for over sixty years, and further, while it is not undisputed, there is substantial evidence in the record to support the finding that the legislature has acquiesced in that practice. We feel, therefore, that the Department's interpretation of the Savings Bank Act is reasonable, that its decision is neither arbitrary, capricious nor in excess of statutory authority, and that its decision is supported by substantial evidence.

The Department's decision in the LaPorte Savings Bank case, an unreported administrative order cited by Petitioners as a contrary statement of administrative policy, in which the Department ordered the LaPorte Savings Bank to cease its practice of offering checking accounts, is irrelevant to the case before us. In that case, the Department specifically stated in its order and findings that the LaPorte Bank was engaged in an unsafe and unsound banking practice due to its method of operation. Such is not the case with Respondent.

We agree with the statement of the court in *Hudson County, supra,* that the question of whether or not savings banks should be allowed to offer checking accounts is more properly a matter of statutory regulation than common law. The opportunity remains with the General Assembly to amend our banking laws should it disagree with the position of the Department. We hold, therefore, that there are no compelling grounds for reversing the decision of the Department.

Judgment reversed.

Lowdermilk and Robertson, JJ., concur.

NOTE — Reported at 380 N.E.2d 1288.