**Robert A. BENDER, Appellant (Defendant below),**

v.

**STATE of Indiana ex rel., Elaine I. WAREHAM, et al., for the Benefit of Allen County, Indiana, Appellees (Plaintiffs below).**

**No. 3–976A225.**

Court of Appeals of Indiana, Third District.

April 24, 1979.

Rehearing Denied May 31, 1979.

---

4. The support order was modified accordingly.

5. Both parties retained different counsel for purposes of appeal.

William F. McNagny and John F. Lyons, Barrett, Barrett & McNagny, Fort Wayne, for appellant.

Larry J. Burke and Robert Owen Vegeler, Kennedy, Dumas, Burke & Backs, P.C., Fort Wayne, for appellees.

HOFFMAN, Judge.

The relators brought this suit against Bender, the former Sheriff of Allen County, claiming that he had unlawfully profited from the feeding of prisoners in the county jail. They contended that under the terms of IC 1971, 17–3–75–2 (Burns Code Ed.) the exact amount of money required to feed county prisoners was to be appropriated by the county council and that any system which allowed the sheriff to receive a flat per meal fee for that purpose was unlawful in Allen County. Pursuant to the terms of IC 1971, 17–1–24–44 (Burns Code Ed.), the relators sought to recover for the benefit of the county the allegedly illegal profits realized between January 1, 1967 and August 31, 1972.

In his answer Bender denied that he was liable to the county. He maintained throughout this suit that IC 1971, 17–3–12–1 (Burns Code Ed.), which provided that sheriffs received a flat per prisoner meal fee, governing the feeding of prisoners in Allen County. Under that statute, he argued, he was entitled to retain any funds which remained after the expenses of feeding the prisoners had been paid.

The court below found for the relators and, pursuant to IC 1971, 17–1–24–44, *supra*, entered judgment against Bender in the amount of $167,846.94 plus interest of $50,852.12 for a total of $218,699.06, togeth-

er with attorneys fees and expenses of $10,-536.49, and costs. From that judgment Bender appeals.

IC 1971, 17–3–75–2, *supra*, upon which the trial court based its judgment, reads as follows:

"17–3–75–2 [49–1025]. County council—Appropriation for feeding county prisoners—Expended by sheriff—County commissioners—Accounting.—The county council shall make such appropriations, in the same manner as now provided by general laws relating to the making of appropriations for ordinary county purposes, as it may consider necessary for the feeding of county prisoners. All such appropriations so made shall be expended by the sheriff under the direction of the board of county commissioners and an accounting of such expenditures shall be filed monthly with the auditor of the county on or before the fifth day of the month following the making of such expenditures, and no profit shall accrue to any officer, his deputy, or employees as a result of such appropriations."

Although this section appears to be one of general applicability, the title of the enactment of which it is a part, Acts 1955, chapter 69, indicates that the contrary is true:

"AN ACT to provide for the fixing of salaries and paying the expenses of certain officers in counties having a population of not less than 200,000 nor more than 400,000 according to the last preceding United States census, which counties shall constitute a separate judicial circuit as now defined by law; the disposition of fees, and the feeding of county prisoners by the sheriff, prescribing the duties of county treasurer, and repealing of laws or parts of laws in conflict herewith and declaring an emergency."

██ It is settled in Indiana that the title of an enactment must be considered in order to determine its applicability. *See: Cordial v. Grimm* (1976), Ind.App., 346 N.E.2d 266, at 271; *Board Comrs. v. Bd. Sch. Comrs. of Indpls.* (1960), 130 Ind.App. 506, at 518–519, 166 N.E.2d 880, at 886. Clearly, the title of this act indicates that

IC 1971, 17–3–75–2, *supra*, applies only to those counties in which the population is not less than 200,000 nor more than 400,000 according to the last preceding United States census. Thus, each sheriff in such a county is bound to seek appropriations from the county council for the exact amount of funds needed to feed the prisoners in his charge.

IC 1971, 17–3–12–1 (Burns Code Ed.), upon which Bender relies, provides that the sheriff in counties with a population of less than 275,000 is entitled to receive a flat fee for each meal fed to each prisoner in his charge:

"17–3–12–1 [49–1323]. Feeding of prisoners—Allowance to sheriff—Fixing allowance—State board of examiners—Reports by sheriff.—The sheriff of each county having a population of less than forty thousand [40,000] according to the last preceding decennial census shall be allowed a sum not to exceed one dollar and twenty-five cents [$1.25] per meal served by the sheriff to the prisoners in his charge. The expense of feeding prisoners in the custody of the sheriff in each county having a population of forty thousand [40,000] or more according to the last preceding decennial census shall be allowed a sum not to exceed one dollar and five cents [$1.05] per meal. The sheriff of each county having a population of two hundred and seventy-five thousand [275,000] or more according to the last preceding decennial census shall be allowed a sum as otherwise provided by law. The exact amount per meal which the sheriff of each county is entitled to receive for feeding prisoners shall be fixed by the state examiner of the state board of accounts on or before the fifteenth day of April of each year to take effect immediately on approval. The allowance shall be paid out of the general fund of the county after the sheriff submits to the board of county commissioners an itemized statement, under oath, showing the names of the prisoners, the date that each was imprisoned in the county jail, and the number of meals served to each prisoner."

During the period of time relevant to this suit, however, sheriffs in counties having a population of less than 300,000 were entitled to receive the per meal fee.[1] Not until the enactment of Acts 1972, P.L. 123, § 1, was the population limit changed from 300,000 to 275,000.

By their own terms, IC 1971, 17–3–75–2, *supra*, and IC 1971, 17–3–12–1, *supra*, are irreconcilable when applied to counties having a population of not less than 200,000 nor more than 300,000 during the years relevant herein. IC 1971, 17–3–75–2 requires that the funds for prisoner meals be appropriated by the county council, while IC 1971, 17–3–12–1 allows a sheriff to obtain a fee per prisoner meal set each year by the State Board of Accounts.

According to the 1960 United States census, Allen County had a population of 232,196, and according to the 1970 census, it had a population of 280,455.[2] This being true, Allen County apparently fell within the terms of *both* statutes while Bender served as sheriff.

■ Where, as here, the applicability of a statute is in doubt a court may look to the interpretation placed upon the statute by an administrative agency charged with its enforcement. *See: Gross Income Tax Div. v. Colpaert Realty Corp.* (1952), 231 Ind. 463, at 478–479, 109 N.E.2d 415, at 422. Such an administrative interpretation is not binding on this Court, but it is entitled to a great weight. *Gross Income Tax Div. v. Colpaert Realty Corp., supra* ; *Terre Haute Savings Bank v. Indiana State Bank et al.* (1978), Ind.App., 380 N.E.2d 1288. Furthermore, where the legislature makes no change in the statutory provision in the face of a long-standing administrative interpretation, a presumption arises that the Legislature has acquiesced in that interpretation. *Baker v. Compton et al.* (1965), 247 Ind. 39, at 42, 211 N.E.2d 162, at 164; *Terre Haute Savings Bank v. Indiana State Bank et al., supra.*

■ An examination of the record discloses that there was uncontradicted evidence that the State Board of Accounts, the agency charged with setting prisoner meal fees, had long interpreted IC 1971, 17–3–12–1 to apply to Allen County.

At trial Bender testified that, prior to being elected sheriff, he had served as field captain to his predecessor. While in that position, he had learned and had followed the procedures prescribed by the State Board of Accounts for obtaining fees for feeding prisoners.

Following his election Bender was requested to attend an instructional program, conducted by the State Board of Accounts, on the proper method for filing for the fee allowance. Each year during his term, he received a letter from the Board directing him to charge a specific amount for each meal served. He then submitted claims for fees on forms prescribed by the Board. Bender also filed the itemized statements required by IC 1971, 17–3–12–1, with the county commissioners, which statements were audited biannually by the Board.

That the State Board of Accounts had continually construed IC 1971, 17–3–12–1 to provide for the fee system of feeding prisoners in Allen County was even more firmly established by evidence of the methods used by Bender's predecessor, Custer Dunifon. Dunifon testified that he served as Allen County sheriff during the years 1959

---

1. The complementary provision for the remaining counties is IC 1971, 17–2–85–2 (Burns Code Ed.):

   "17–2–85–2 [49–1020]. County council—Appropriations for feeding prisoners in counties of 300,000 or more population.—The county council shall make such appropriations, in the same manner as now provided by general laws relating to the making of appropriations for ordinary county purposes, as it may consider necessary for the feeding of county prisoners. All such appropriations so made shall be expended by the sheriff under the direction of the board of county commissioners and an accounting of such expenditures shall be filed semi-annually with the auditor of the county on the first Monday of January and the first Monday of July of each year and there shall be no profit accrue to any officer, his deputy, or employees as a result of such appropriations."

2. These population statistics were not in dispute.

through 1966 and that he had fed county prisoners by the fee system during his entire term of office. He further explained that he utilized the same system as that employed by Bender with the express approval of the Board.

In the face of this established interpretation by the State Board of Accounts, the Legislature twice amended IC 1971, 17–3–12–1 between 1960 and 1972. Each time it re-enacted the provisions as affecting counties with populations of not less than 200,000 nor more than 300,000. *See*: Acts 1961, ch. 261, § 1, p. 590; Acts 1967, ch. 62, § 1, p. 129. During that time span the fee system was firmly entrenched in Allen County, although the county's population seemingly placed it within the terms of IC 1971, 17–3–75–2 as well. Such circumstances plainly give rise to a presumption that the Legislature had acquiesced in the Board's interpretation. *Baker v. Compton et al., supra; Terre Haute Savings Bank v. Indiana State Bank et al., supra.*

There is yet another set of circumstances which manifests the Legislature's intent that IC 1971, 17–3–12–1 be applied to Allen County. According to the 1970 United States census, the only county in Indiana with a population of less than 300,000 but more than 275,000 was Allen County.[3] Thus, the only possible immediate effect of Acts 1972, P.L. 123, § 1, p. 616, which lowered the population limit of IC 1971, 17–3–12–1, would be to abolish the existing fee system in Allen County in favor of the appropriation system provided by IC 1971, 17–3–75–2.

In view of the administrative and legislative history detailed above, it appears beyond question that IC 1971, 17–3–12–1 was intended to apply to Allen County. Thus, the court's conclusion to the contrary was clearly erroneous. Indiana Rules of Procedure, Trial Rule 52(A).

3. This Court may take judicial notice of United States census statistics.
   *Est. of Rhoden v. McPeak* (1968), 143 Ind. App. 537, 241 N.E.2d 800; *Miller et al. v. City*

Accordingly, the judgment below is reversed and the cause remanded with instructions to enter judgment for Bender.

Reversed and remanded.

GARRARD, P. J., concurs.

CHIPMAN, P. J., participating by designation, concurs.

*of Evansville et al.* (1963), 244 Ind. 1, 189 N.E.2d 823.