NATURAL RESOURCES COMMISSION OF the INDIANA DEPARTMENT OF NATURAL RESOURCES, Appellant (Plaintiff Below),

v.

PORTER COUNTY DRAINAGE BOARD, Appellee (Defendant Below).

No. 64S04–9108–CV–623.

Supreme Court of Indiana.

Aug. 13, 1991.

Linley E. Pearson, Atty. Gen., Daniel P. McInerny, Deputy Atty. Gen., Indianapolis, for appellant.

Herbert K. Douglas, Douglas, Douglas & Hurley, Valparaiso, for appellee.

ON CIVIL PETITION FOR TRANSFER

SHEPARD, Chief Justice.

The Porter County Drainage Board has designated part of Salt Creek as a regulated drain. We hold that such a designation does not allow the board to bypass the statute requiring a permit from the Indiana Department of Natural Resources for construction projects affecting Indiana's rivers and streams. Ind.Code § 13–2–22–1 to –21 (West 1990 & Supp. 1990).

Salt Creek is a Lake Michigan tributary 24.5 miles long. The Porter County Drainage Board has designated 8.5 miles of the creek as "Parker Drain."[1] Salt Creek itself is a spawning run, imprinting and stocking site for salmon and steelhead trout. Parker Drain, as a portion of the creek, plays an integral role in the breeding process of these fish.

On July 14, 1989, Lieutenant David Bateman, a conservation officer from the Indiana Department of Natural Resources (DNR), observed a dredging operation 2.5 miles south of Valparaiso in Salt Creek's floodway. Returning three days later, Lieutenant Bateman found that trees and brush had been cleared from the north or east side of the creek. The spoil had been deposited on the bank, uncovered and uncontained. Lieutenant Bateman saw some construction equipment along the creek, including a bulldozer and a dragline. The equipment was being operated by Bill Durflinger, who received his instructions from the Porter County Drainage Board. Lieutenant Bateman informed Durflinger that state law required a DNR permit for such

1. Parker Drain's headwater and mouth *are* Salt Creek; it is not a separate body of water.

588

work and directed Durflinger to cease operations until he obtained a permit. Lieutenant Bateman also mentioned that DNR would probably not issue a permit at that time, given the moratorium on construction in Lake Michigan tributaries due to the migration of salmon and trout.

Although several meetings were held in an effort to resolve the dispute, the drainage board refused to terminate the project. The DNR then sought injunctive relief in the Porter Circuit Court, seeking to enjoin construction until the board obtained a permit. The trial court denied the application, holding that the board did not need a DNR permit because the statute requiring permits exempts certain drains. The Court of Appeals reversed the trial court's denial of injunctive relief, concluding that the permit exception did not apply where the drain is merely an inclusive part of the stream. *Natural Resources Comm'n v. Porter County Drainage Bd.* (1990), Ind.App., 555 N.E.2d 1387. The Indiana Flood Control Act, Ind.Code § 13–2–22–1 to –21 (West 1990 & Supp.1990), governs activities within the floodways of Indiana rivers and streams. It provides that no one may conduct a construction or excavation project within a floodway without first receiving a permit from DNR. Ind.Code § 13–2–22–13(d) (West Supp.1990). There is an exception to the permit requirement stating:

However, authorization and approval of the director is not required for:

(1) a reconstruction or maintenance project (as defined in IC 36–9–27) on a stream or regulated drain in an agricultural (or rural) area where the total length of the stream or drain is ten (10) miles or less . . .;

Ind.Code § 13–2–22–13(d)(C)(1). The issue here is whether work on Parker Drain falls within this exception.

Indiana Code § 13–2–22–13(d)(C)(1) is ambiguous in that it provides no guidance on how to measure the length of a stream or drain. The parties' differing interpretations gave rise to this lawsuit. DNR interprets Indiana Code § 13–2–22–13(d) as applying to streams or regulated drains that are ten miles or less in length from the

stream or drain's headwater to its mouth. Because Parker Drain is simply a portion of the 24.5 mile Salt Creek, says the DNR, the exception does not apply. The drainage board, on the other hand, contends that Parker Drain, designated by the board as 8.5 miles long, is plainly a "regulated drain in an agricultural (or rural) area where the total length of the stream or drain is ten (10) miles or less."

 The General Assembly has declared that the object of the Indiana Flood Control Act is to prevent flooding *and* preserve Indiana's water resources:

It is hereby declared (a) that the loss of lives and property caused by floods, and the damage resulting therefrom, is a matter of deep concern to the state affecting the life, health and convenience of the people and the protection of property; that to prevent and limit floods all flood control works and structures, the alteration of natural or present water courses of all rivers and streams in the state should be regulated, supervised and coordinated in design, construction and operation according to sound and accepted engineering practices so as to best control and minimize the extent of floods and reduce the height and violence thereof; (b) that the channels and that portion of the flood plains of rivers and streams, which are the floodways, should not be inhabited and should be kept free and clear of interference or obstructions which will cause any undue restriction of the capacity of the floodways; (c) that the water resources of the state, which have been diminishing, should be accumulated, preserved and protected to prevent any loss or waste beyond the reasonable and necessary use thereof; and (d) that a master plan or comprehensive plan for the entire state, to control floods, and to accumulate, preserve and protect the water resources, should be investigated, studied and prepared; policy and practices established, and the necessary works constructed and placed in operation.

Ind.Code § 13–2–22–2 (West 1990). DNR's interpretation of the statute better matches

this legislative intent by protecting Indiana's floodways and providing adequate regulatory oversight. Moreover, the interpretation of a statute by the administrative agency charged with its enforcement is entitled to great weight. *Bender v. State ex rel. Wareham* (1979), 180 Ind. App. 236, 388 N.E.2d 578. Further, any exceptions to a statute must be strictly construed. *Common Council of Peru v. Peru Daily Tribune* (1982), Ind.App., 440 N.E.2d 726. The legislature having decided that the policy of the state shall be regulation to protect our waters, we are reluctant to interpret the statute in a way which allows drainage boards to avoid the policy by designating ten-mile sections of existing streams as drains.

The drainage board contends that the DNR's interpretation of Indiana Code § 13–2–22–13 would greatly reduce the autonomy of local drainage boards and undermine their judgment. The Court of Appeals was correct, however, that "when a municipality's purpose overlaps with that of a state agency, the municipality or agency which is in the best position to judge the larger effects of the situation should control." *Natural Resources Comm'n* 555 N.E.2d at 1390. The record in this case suggests the wisdom of the legislature's policy choice. DNR's employees have been trained to make educated determinations about the ramifications of dredging and construction operations on natural resources, while the drainage board's expert has no such training. Record at 27, 28, and 49.

The drainage board notes that Indiana Code § 13–2–22–13 includes a reference to Indiana Code § 36–9–27–1 et seq., the drainage law obligating the drainage board and the county surveyor to do what is necessary to reconstruct a regulated drain when it no longer fulfills the purposes for which it was constructed. The board further relies on Indiana Code § 13–2–22–2(b), which states that floodways should be kept clear of obstructions which cause undue restriction of the capacity of those floodways. The drainage board maintains that reading these statutes together leads to the conclusion that to require a permit would frustrate legislative intent and inhibit the proper functioning of the drainage board.

Requiring the drainage board to obtain a permit from DNR hardly precludes the board from carrying out its duties under Indiana Code § 36–9–27–1 et seq. and Indiana Code § 13–2–22–2(b). It does mean that the drainage board must plan ahead and apply for a permit. As noted by the Court of Appeals, the board waited approximately three years between the decision to initiate this project and the commencement of the work. Thus, the DNR permitting process should not represent a burden to the project.

We conclude that Indiana Code § 13–2–22–13(d) does require the Porter County Drainage Board to obtain a permit from DNR for any work on Parker Drain. The trial court is reversed and the cause remanded with directions to grant injunctive relief to DNR.

DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents with separate opinion.

DeBRULER, J., concurs in Justice GIVAN's dissent.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in that the holding that the Porter County Drainage Board must file an application with the Department of Natural Resources in order to clear a drainage system implies that the DNR could deny the permit. It is obvious that the welfare of the majority of the citizens and the economic use of land dictates that there must be proper drainage. On the other hand, such drainage should be accomplished with the least possible damage to the environment.

I therefore would restrict the DNR to the setting of the time of year in which the drain clearance could be accomplished. I would hold that the DNR does not have the ability to prevent the proper clearing of drainage ways.

DeBRULER, J., concurs.