The JOINT NOBLE–LaGRANGE
COUNTY DRAINAGE BOARD,
Appellant–Respondent,

v.

ACRES, INC., Town of Albion, Izaak
Walton League of America, City of
Ligonier, Rome City Conservancy Dis-
trict, Town of Rome City, Robert
Shellman and Elizabeth Shellman,
Michael R. Shellman and Terresa
Shellman, Mark E. Shellman and
Beth Shellman, Sylvan Lake Improve-
ment Association, Town of Wolcott-
ville, and David T. White, Appellees–
Petitioners,

and

Director of Indiana Department of
Natural Resources, Appellee–
Intervenor.

No. 57A03–0507–CV–308.

Court of Appeals of Indiana.

March 16, 2006.

J. Everett Newman II, Wigent & Newman Law Office, Ligonier, for Appellant.

Martin R. Lucas, North Judson, for Appellees.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, for Appellee–Intervenor Indiana Dept. of Natural Resources.

## OPINION

BAKER, Judge.

Appellant-respondent The Joint Noble–LaGrange County Drainage Board (Joint Board) appeals from the trial court's order vacating the Joint Board's Final Order establishing certain portions of the Elkhart River and its tributary branches as a regulated drain. Specifically, the Joint Board raises the following arguments: (1) the trial court erred in finding that the Joint Board failed to comply with the

Indiana Nature Preserves Act[1] because the act of establishing a drain is not a "taking" of nature preserves that triggers required statutory procedures; (2) the trial court erred in interpreting Indiana Code section 36–9–27–54(b)(2), which authorizes a county executive to petition for the creation of a new regulated drain to provide for the drainage of "a public highway"; and (3) appellees-petitioners City of Ligonier and Rome City Conservancy District have waived all issues on appeal because they failed to file objections to the Surveyor's final report and schedules with the Joint Board.

Finding that the Joint Board failed to comply with the Indiana Nature Preserves Act, that the petition to establish the regulated drain was insufficient as a matter of law, and that the City of Ligonier and the Rome City Conservancy District should be dismissed because they have waived all issues on appeal, we affirm the judgment of the trial court.

### FACTS[2]

On November 20, 2002, the Board of Commissioners of Noble County (Commissioners) filed a petition with the Noble County Drainage Board seeking to convert portions of the Elkhart River and its three branches into a regulated drain. The Commissioners amended their petition to include lands in LaGrange County and filed their amended petition on February 7, 2003, with the Joint Board.

Following a series of hearings and the submission of a final report by the Noble County Surveyor (Surveyor), on June 6, 2003, the Joint Board entered its Final Order. In essence, the Final Order converted the Elkhart River and its North, Middle, and South Branches in Noble and LaGrange counties into regulated drains, authorized construction, and levied a ditch tax on over 198,000 acres in the watershed.[3] The proposed regulated drains run through, among other things, two nature preserves and Indiana Department of Natural Resources (DNR) Wetland Conservation Areas. As described in the Surveyor's final report, the drain is confined to the rivers themselves with a maintenance easement limited to 25 feet on each side of the drain. Clear-cutting is prohibited and clean up is limited to removing trees within the rivers and trees whose falling is imminent, i.e., trees leaning at a tilt of greater than 45 degrees. Sediment could be removed from the rivers and the sediment traps would be placed at a predicted rate of one per year.

On June 26, 2003, the appellees-petitioners (collectively, the Appellees) filed a petition for judicial review of the Final Order. The Appellees include several municipalities in the watershed,[4] a land trust owning, among other things, dedicated nature preserves,[5] an environmental organization,[6] a not-for-profit corporation owning real estate in the watershed,[7] and several individ-

---

1. Ind.Code § 14–31 *et seq.*

2. We held oral argument in this case on February 15, 2006, in Indianapolis. We commend counsel for their able oral and written presentations.

3. "Watershed" means "an area of land from which all runoff water drains to a given point or that is affected by a small lake." Ind.Code § 36–9–27–2.

4. The Town of Albion, the City of Ligonier, the Town of Rome City, the Incorporated Town of Wolcottville, and the Rome City Conservancy District.

5. Acres, Inc.

6. The Izaak Walton League of America.

7. The Sylvan Lake Improvement Association.

ual landowners.[8] On July 10, 2003, the DNR was joined as an intervening party.

Following a hearing, submission of briefs, and proposed findings of fact and law from the parties, on May 26, 2005, the trial court entered its order vacating the Joint Board's Final Order. Among other things, the trial court concluded as follows:

23. In support of their petition the Noble County Commissioners listed every public highway in the watershed without identifying any particular drainage needs as to any specific public highway.

\* \* \*

25. The authority granted to the county executive pursuant to I.C. § 36-9-27-54(b)(2) is limited to projects intended to "provide for the drainage of a public highway", with such projects designed and constructed in the best and cheapest manner as required in I.C. § 36-9-27-61(5).

26. The Indiana Nature Preserves Act at I.C. § 14-31-1-15(a)(4) provides that nature preserves within the system "may not be taken for any other use except other public use: (a) after a finding by the commission of the existence of an imperative and unavoidable public necessity for the other public use; and (b) with the approval of the governor." No such finding by the Natural Resource Commission or approval by the Governor is evident on the record.

27. The proposed regulated drain will undermine the IDNR's responsibility to manage and protect the dedicated nature preserves and wetland conservation areas within the watershed.

28. As in the past, removal of logjams and other obstructions to the water flow within the river system can be solved cooperatively between the county executive and IDNR without the establishment of a regulated drain.

## CONCLUSIONS OF LAW

\* \* \*

.3. The Noble County Commissioners' petition to convert the Elkhart River into a regulated drain failed to establish a particularized need to drain a specific public highway and therefore exceeded the scope of the authority granted to a county executive under I.C. § 36-9-27-54(b)(2).

\* \* \*

5. The Respondent Board is not in compliance with the Indiana Nature Preserves Act. The Board did not follow the statutory [sic] mandated process before declaring that portion of the Elkhart River which runs through two dedicated nature preserves to be a part of the regulated drain.

6. The record does not support a finding that converting the entire Elkhart River system to a regulated drain would improve or benefit the public health or be of public utility.

Appellant's App. p. 3–5. The trial court vacated and set aside the Final Order, remanding to the Joint Board for further proceedings. The Joint Board now appeals.

*DISCUSSION AND DECISION*

■ As we consider the arguments pre-

---

8. Robert and Elizabeth Shellman, Mark E. and Beth Shellman, and Michael R. and Terresa Shellman. Additionally, David White is an individual landowner who was pro se below and is pro se on appeal. He has not filed briefs on appeal.

sented by the Joint Board,[9] we observe that issues of statutory construction are matters of law, which we review de novo. *Markland v. Jasper Co. Planning and Dev. Dept.*, 829 N.E.2d 92, 96 (Ind.Ct.App. 2005). The primary goal in interpreting the meaning of a statute is to determine and effectuate the legislative intent. *D.R. v. State*, 729 N.E.2d 597, 599 (Ind.Ct.App. 2000). To determine the legislative intent, courts must consider the objectives and purposes of the statute in question together with the consequences of the statute's interpretation. *Id.* A fundamental principle of statutory interpretation is that the court will construe a statute to avoid an absurd result that the legislature could not have intended. *Raider v. Pea*, 613 N.E.2d 870 (Ind.Ct.App.1993).

### I. Compliance with the Indiana Nature Preserves Act

■ The Joint Board first contends that the trial court erred in concluding that the proposed drain is not in compliance with the Indiana Nature Preserves Act. Specifically, the Joint Board argues that establishing the drain will not be a "taking" of nature preserves such that the statutory procedures must be followed.

Indiana Code section 14–31–1–15 describes the proper treatment of nature preserves:

The nature preserves within the system:

(1) are to be held in trust for the benefit of the people of Indiana of present and future generations for those uses and purposes expressed in this chapter that are not prohibited by the articles of dedication;

(2) are declared to be put to the highest, best, and most important use for the public benefit;

(3) shall be managed and protected in the manner approved by and subject to the rules adopted by the department; and

(4) may not be taken for any other use except another public use:

(A) after a finding by the commission of the existence of an imperative and unavoidable public necessity for the other public use; and

(B) with the approval of the governor.

Here, it is undisputed that there was no finding of "the existence of an imperative and unavoidable public necessity" for the proposed drain, nor did the governor approve of the drain. The question—one of

---

9. To the extent that a question was raised at oral argument regarding the ability of a drainage board to establish a regulated drain in a natural watercourse such as the Elkhart River, our research has led us to conclude that it does have such authority. *See* Ind. Code § 36–9–2–9 (providing that a "unit," including a county, "may change the channel of, dam, dredge, remove an obstruction in, straighten, and widen a watercourse"); I.C. § 36–9–7–2 ("regulated drain" includes open drains; "open drain" means "a *natural* or artificial open channel that: (1) carries surplus water; and (2) was established under or made subject to any drainage statute) (emphasis added); I.C. § 36–9–27–61(5) (providing that Surveyor must determine the best and cheapest method of drainage, which may be by: "(A) removing obstructions from a *natural* or artificial watercourse; (B) diverting a *natural* or artificial watercourse from its channel; (C) deepening, widening, or changing the channel of a *natural* or artificial watercourse ....") (emphasis added); *Natural Resources Comm'n v. Porter County Drainage Bd.*, 576 N.E.2d 587, 588 (Ind.1991) (holding that drainage board that establishes regulated drain in Salt Creek, a tributary of Lake Michigan, must obtain permit from DNR to perform work on drain); *Suburban Homes Corp. v. Harders*, 404 N.E.2d 629, 632 (Ind.Ct.App. 1980) (holding that interpretation of drainage code regarding mutual drains "in no way precludes a county from subjecting a natural watercourse to the provisions of the Indiana Drainage Code").

first impression—is whether establishing this drain, which would run through nature preserves, would mean that the preserves are being "taken" such that the above procedures must be followed.

Indiana Code section 14–31–1–7 describes the purpose of the Indiana Nature Preserve system:

To secure for the people of Indiana of present and future generations the benefits of an enduring resource of areas, the state shall, acting through the department, acquire and hold in trust for the benefit of the people an adequate system of nature preserves for the following uses and purposes:

(1) For scientific research in fields such as ecology, taxonomy, genetics, forestry, pharmacology, agriculture, soil science, geology, paleontology, conservation, and similar fields.

(2) For the teaching of biology, natural history, ecology, geology, conservation, and other subjects.

(3) As habitats for plant and animal species and communities and other natural objects.

(4) As reservoirs of natural materials.

(5) As places of natural interest and beauty.

(6) As living illustrations of our natural heritage in which an individual may observe and experience natural biotic and environmental systems of the earth and the processes of the systems.

(7) To promote understanding and appreciation of the esthetic, cultural, scientific, and spiritual values of the areas by the people of Indiana.

(8) For the preservation and protection of nature preserves against modification or encroachment resulting from occupation, development, or other use that would destroy the natural or aesthetic conditions of nature preserves.

The Appellees emphasize that the statute explicitly decrees that dedicated nature preserves must be protected from any kind of modification or encroachment resulting from any use that would destroy the natural or aesthetic condition.

The Joint Board insists that establishing this drain in the Elkhart River is not a "taking" of nature preserves. It notes that there is only a twenty-five-foot maintenance easement with no right to use the banks for placement of materials and vegetation removed from the drain. Moreover, vegetation removal is limited to trees that are leaning at a forty-five or greater degree angle.

The Joint Board directs us to *Johnson v. Kosciusko County Drainage Bd.*, 594 N.E.2d 798 (Ind.Ct.App.1992), as support for its argument. In *Johnson,* a legal drain with a seventy-five-foot easement was found not to be a taking. Similarly, in *Mattingly v. Warrick County Drainage Bd.,* 743 N.E.2d 1245 (Ind.Ct.App.2001), an easement whereby a landowner was required to remove a building from his own property was found not to be a taking. The Joint Board insists that the proposed drain in this case will have a significantly smaller impact on DNR's rights than those approved in *Johnson* and *Mattingly.*

Our review of *Johnson* and *Mattingly* establishes that the issue before those courts was whether a regulated drain constituted an unconstitutional taking pursuant to the takings clause in the Fifth Amendment to the United States constitution. Thus, while *Johnson* and *Mattingly* accurately describe the state of Indiana drainage law with respect to the takings clause, they have no relevance to the matter at hand. At issue here is the Indiana Nature Preserves Act, not the takings clause. The Joint Board has not cited to

any authority suggesting either that the regulated drain at issue is not a "taking" pursuant to the Indiana Nature Preserves Act or that the Joint Board is exempt from the provisions of that Act.

Furthermore, we observe that *Johnson* and *Mattingly* are distinguishable because both cases involved a taking of private property. Here, however, we must examine the drain's effect on nature preserves. It is apparent to us that the Nature Preserves Act suggests that nature preserves should be treated differently than private property. Indeed, the Act makes clear that the legislature has put a number of protections in place to safeguard nature preserves that do not exist to protect private property.

■ We turn next to the plain language of the statute to determine whether establishing this drain would be "taking" the nature preserves. Indiana Code section 14–31–1–7(8) provides that nature preserves must be protected "against modification or encroachment resulting from occupation, development, or other use that would destroy the natural or aesthetic conditions of nature preserves." We are persuaded that this language provides that any such modification or encroachment would be a "taking" of nature preserves that would trigger the requirement for a finding of necessity and the governor's approval.

As to whether the drain at issue here would be an impermissible modification or encroachment, we turn to the DNR's analysis of the potential effects it would have on the nature preserves. The DNR notes that a regulated drain in a watershed system will need periodic maintenance, I.C. § 36–9–7–34, and suggests that this maintenance could include cleaning the drain, spraying the drain, removing obstructions

from the drain, and making minor repairs to the drain. It could also involve the removal of trees, logs, and stream bank vegetation. The DNR also emphasizes that

> [o]nce periodic maintenance such as removal of trees, logs, and stream bank vegetation has been performed on a legal drain that runs through a nature preserve, the nature preserves cannot be wholly restored, and are left open and vulnerable to similar or more severe maintenance actions in the future.

DNR's Br. p. 8.

We agree with the DNR and the Appellees that it is clear from the Nature Preserves Act that the legislature intended to protect nature preserves from such actions. By requiring that any governmental body seeking to "take" nature preserves for another public use must make a showing of necessity and obtain the governor's approval—and not creating an exception for regulated drains—the legislature has shown its intent to protect nature preserves from modification and encroachment such as the regulated drain at issue in this case. Accordingly, we conclude that the trial court properly vacated the Joint Board's Final Order with respect to the nature preserves.

■ As to the wetlands, we note that the General Assembly has given the State control and authority over dedicated wetlands. *See* Ind.Code §§ 13–18–22 *et seq.*, 14–18–7–1, 13–11–2–265.7. Accordingly, the DNR argues that the Home Rule Act,[10] prevents the Joint Board from establishing the proposed drain in the portions of the Elkhart River that run through dedicated wetlands. The Home Rule Act, among other things, prohibits local government from imposing duties on another political subdivision except as ex-

---

**10.** Ind.Code § 36–1–3 *et seq.*

pressly granted by statute. I.C. § 36–1–3–8(a)(3). While the Joint Board argues that in establishing the regulated drain, it has not imposed a single duty upon DNR, we believe that the Final Order imposes an implicit duty on the DNR to accept the placement and maintenance of the drain. Because the Home Rule Act prevents the Joint Board from taking such an action, we conclude that the trial court properly vacated the Joint Board's Final Order with respect to the dedicated wetlands.

## II. Petitions Filed by County Executives

■ The Joint Board next argues that the trial court erred in interpreting Indiana Code section 36–9–27–54, which sets forth the procedures that must be followed to file a petition for a new regulated drain:

(a) When one (1) or more persons want to establish a new regulated drain, and that drain cannot be established in the best and cheapest manner without affecting land owned by other persons, the person or persons seeking to establish the drain must file a petition with the board. If the proposed drain will affect land in two (2) or more counties, the petition shall be filed in each of the affected counties. The petition shall be entitled "In the Matter of the _____ Drain Petition".

(b) The petition may be filed by:

(1) the owners of:

(A) ten percent (10%) or more in acreage; or

(B) twenty-five percent (25%) or more of the assessed valuation;

of the land that is outside the corporate boundaries of a municipality and is alleged by the petition to be affected by the proposed drain;

(2) *a county executive that wants to provide for the drainage of a public highway;*

(3) a township executive or the governing body of a school corporation that wants to drain the grounds of a public school; or

(4) a municipal legislative body that wants to provide for the drainage of the land of the municipality.

(Emphasis added). Here, it was the Noble County Commissioners who filed the petition, and, accordingly, they were required to establish that they wanted "to provide for the drainage of a public highway . . . ." I.C. § 36–9–27–54(b)(2).

Among the purposes of the petition is to provide notice to landowners who may be affected by the proposed regulated drain. I.C. § 36–9–27–58. The affected landowners are then entitled to file a written remonstrance or objection to the drain, which the drainage board will take under consideration as it makes its final decision. I.C. § 36–9–27–59. A petition must provide enough specific information to the landowners to enable them to craft and file their objections.

The Commissioners' petition to establish a new regulated drain included a list, attached as Exhibit A, of "the public highways which the county executive believes . . . will be drained" as a result of the desired drain. Appellees' App. p. 1. In essence, Exhibit A contains a list of every county road, city street, and town street in the watershed. Appellant's App. p. 31. The trial court concluded that the petition "failed to establish a particularized need to drain a specific public highway and therefore exceeded the scope of the authority granted to a county executive under I.C. § 36–9–27–54(b)(2)." Appellant's App. p. 4.

■ Initially, we observe that a petition containing an exhaustive list of nearly every county road, city street, and town street in the watershed does not contain sufficient information to enable an affected landowner to file a written remonstrance or objection. Moreover, the Joint Board's interpretation of this statute would render the statutory reference to drainage of "a public highway" meaningless because it would give the drainage board virtually unlimited authority to petition for a new regulated drain in any watershed where a public highway exists. Ultimately, therefore, we believe that to comply with the statute, a petition to establish a new regulated drain that is filed by county executives must establish that the proposed drain would provide drainage for one or more specific public highways. In this case, we conclude that the rote listing of nearly every road in the watershed was insufficient to comply with the statute.

■ The Joint Board observes that the drainage board's only purpose prior to the establishment of a drain is to determine whether the proposed drain complies with certain statutory requirements. We agree, but conclude that an implicit part of that determination is an evaluation of the initial petition. Accordingly, before a drainage board holds any hearings on the proposed drain, it must determine that the petition complies with Indiana Code section 36–9–27–54. Here, the Joint Board did not evaluate the petition to ensure that its form was proper, and indeed, as noted above, we have determined herein that the petition did not comply with Indiana Code section 36–9–27–54. Consequently, we conclude that the trial court properly vacated the Joint Board's Final Order.

### III. Waiver

■ Finally, the Joint Board contends that neither the City of Ligonier nor the Rome City Conservancy District have standing to join in this appeal because both parties waived their right to object to any final act of the Joint Board. Indiana Code section 36–9–27–65 provides that the failure to file objections with the Joint Board to the Surveyor's report and/or schedule waives a party's right to contest any final action of the drainage board. The City of Ligonier filed no objection to the surveyor's report, and the Rome City Conservancy District did not include any of the issues on appeal in its objections. Thus, the Joint Board argues that these parties have waived their right to take part in this appeal. The Appellees concede the issue of waiver with respect to these two parties, but emphasize that even if we were to find that it was error to include these two parties on appeal, the error was harmless inasmuch as it is undisputed that the remaining Appellees preserved these issues.

■ Inasmuch as the City of Ligonier and the Rome City Conservancy District have waived their right to object to any final act of the Joint Board, we order that they are dismissed from this appeal. We also note, however, that their dismissal in no way affects the remaining Appellees.[11]

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.

---

11. The Appellees argue that the Joint Board's brief is not in substantial compliance with the appellate rules and that, accordingly, we should impose sanctions thereon. While we agree that there are numerous imperfections in the format of the Joint Board's opening brief, none are of such import as to support an award of sanctions.